# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

### Case No. 1:20-cv-21865-FAM

PALM SPRINGS MILE ASSOCIATES,
LTD., a Florida limited partnership, and
PHILIPS LAKE WORTH LLC, a Florida
limited partnership,

        Plaintiffs,

v.

ROSS DRESS FOR LESS, INC., a
Virginia corporation, and ROSS STORES,
INC., a Delaware corporation,

        Defendants.

## DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
## AMENDED COMPLAINT AND SUPPORTING MEMORANDUM OF LAW

## <u>TABLE OF CONTENTS</u>

<u>Pages</u>

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................2

I.    The Governing Leases Contain Numerous Conditions Precedent that Must Be Satisfied Before a Party May File Suit .................................................................................2

II.    Landlords Prematurely File Suit and Ignore Ross' Rights Under the Governing Leases .................................................................................................................................5

ARGUMENT ..........................................................................................................................9

I.    Landlords' Amended Complaint Must be Dismissed Under Rule 12(b)(1) for Lack of Subject Matter Jurisdiction .................................................................................9

    A.    Subject Matter Jurisdiction and the Rule 12(b)(1) Standard ...................................9

    B.    All of Landlords' Claims Are Premature ...........................................................10

        1.    Landlords Failed to Satisfy the Conditions Precedent Before Filing Suit ................................................................................................................10

        2.    Landlords' Claims for Breach and Anticipatory Repudiation Are Unripe for Additional Reasons .................................................................12

    C.    Landlords' Claim for Declaratory Judgment Lacks a Case or Controversy Because Ross Has Not Invoked the Force Majeure Clause ...................................13

II.    Landlords' Amended Complaint Must Be Dismissed Under Rule 12(b)(6) for Failing to State a Claim Upon Which Relief May Be Granted .........................................14

    A.    The Rule 12(b)(6) Standard ...............................................................................14

    B.    Landlords Fail to Allege a Valid Claim for Accelerated Rent.............................15

    C.    Landlords Fail to Allege Sufficient Facts to Support a Claim for Anticipatory Repudiation .................................................................................16

III.    Should the Court Grant the Motion, Ross is Entitled to and Fully Intends to Seek Attorneys' Fees from Landlords .......................................................................................17

CONCLUSION......................................................................................................................17

CERTIFICATE OF SERVICE .............................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.*,
    68 F.3d 409 (11th Cir. 1995) ................................................................14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................15

*Charles v. Deutsche Bank Nat'l Trust Co.*,
    No. 1:15-cv-21826-KMM, 2016 WL 950968 (S.D. Fla Mar. 14, 2016) ................................12

*Elend v. Basham*,
    471 F.3d 1199 (11th Cir. 2006) ................................................................10

*Fed. Deposit Ins. Corp. v. Univ. Anclote, Inc.*,
    764 F.2d 804 (11th Cir. 1985) ................................................................17

*Fla. Power & Light Co. v. Bellsouth Telecomms., LLC*,
    Case No. 19-81043-CIV-ROSENBERG/REINHART, 2020 U.S. Dist. LEXIS
    21536 (S.D. Fla. Jan. 31, 2020) ................................................................11

*Gill as Next Friend of K.C.R. v. Judd*,
    941 F.3d 504 (11th Cir. 2019) ................................................................15

*Harvey v. United States*,
    No. 15-CV-24438-ALTONAGA, 2017 U.S. Dist. LEXIS 4152 (S.D. Fla. Jan.
    10, 2017) ................................................................................................5

*IVX Animal Health, Inc. v. Burger*,
    475 F. Supp. 2d 1264 (S.D. Fla. 2007) ................................................................9

*Mori v. Matsushita Elec. Corp. of Am.*,
    380 So.2d 461 (Fla. 3d DCA 1980) ................................................................16

*Moynihan v. W. Coast Life Ins., Co.*,
    607 F. Supp. 2d 1336 (S.D. Fla. 2009) ................................................................12

*Oxford Asset Mgmt., Ltd. v. Jaharis*,
    297 F.3d 1182 (11th Cir. 2002) ................................................................15

*Palm Beach Int'l, Inc. v. Salkin*,
    No. 10-60995-CIV, 2010 WL 5418995 (S.D. Fla. Dec. 23, 2010)........................................16

*PTA-FLA, Inc. v. ZTE USA, Inc.*,
  No. 3:11-cv-510-J-32JRK, 2011 WL 5024647 (M.D. Fla. Oct. 21, 2011)............................10

*Slaughter v. Barnett*,
  114 Fla. 352 (1934)..............................................................................................16

*Trianon Condo. Ass'n, v. QBE Ins. Corp.*,
  741 F. Supp. 2d 1327 (S.D. Fla. 2010) ............................................................13, 14

## Other Authorities

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) ..........................................1, 9, 10, 14, 15

28 Fla. Jur. 2d Guaranty and Suretyship § 13 (2020) ...................................................17

Office of the Governor Executive Order No. 20-52 ......................................................5

Office of the Governor Executive Order No. 20-89 ......................................................5

Office of the Governor Executive Order No. 20-112 ....................................................5

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendants Ross Dress for Less, Inc., and Ross Stores, Inc. (collectively, "Ross" or "Defendants") bring this motion to dismiss (the "Motion") the Amended Complaint [ECF No. 13] (the "Amended Complaint" or "Am. Compl.") filed by Plaintiffs Palm Springs Mile Associates, Ltd. and Philips Lake Worth LLC (collectively, "Plaintiffs" or "Landlords") and in support state the matters set forth below.

## INTRODUCTION

The Amended Complaint is filed in clear contravention of the Leases attached to it and fails to cure any of the fatal deficiencies in Landlords' Original Complaint.  Most importantly, Landlords ignore the fundamental reason why their lawsuit should be dismissed: the Leases by their very terms require that the parties address any disputes such as this one *before* any suit is filed and *outside* of court.  Instead of following the Leases' plain requirements, Landlords contravened them and went straight to the courthouse notwithstanding that the Leases provide for a number of steps that must occur before litigation could commence, such as notice, a cure period, and a mandatory mediation. Moreover, the additional exhibits attached to the Amended Complaint only further support dismissal.  Therefore, pursuant to the plain language of the three operative leases, the Amended Complaint should be dismissed immediately for lack of jurisdiction and failure to state a claim.

In reality, this lawsuit—prematurely and recklessly filed in direct contravention of Ross' pre-suit contractual rights and without Landlords making any requisite attempt whatsoever to comply with their pre-suit contractual obligations—is nothing more than a misplaced publicity stunt intended to gain an improper benefit and leverage against Ross.  Specifically, the Amended Complaint blatantly disregards and deprives Ross' carefully bargained for rights under the governing leases: (1) to notice and a subsequent 10 business day cure period; (2) requiring the

parties to *first* try in "good faith" to resolve any disputes by mediation; (3) requiring the parties to refrain from filing suit until 60 days after either party sends a notice requesting mediation; and (4) permitting Ross to withhold rent in the event of a bona fide dispute between the parties.  As discussed in detail herein, Landlords' Amended Complaint contains numerous fatal pleading deficiencies under Rules 12(b)(1) and/or 12(b)(6), and Landlords are not entitled to any of the relief sought in their Amended Complaint under the facts or law as pled.  Simply put, Landlords' premature and improper lawsuit is a waste of this Court's and Ross' time and resources and should be summarily dismissed.

## BACKGROUND

**I.** **The Governing Leases Contain Numerous Conditions Precedent that Must Be Satisfied Before a Party May File Suit**

Ross and Landlords entered into the "511 Lease," the "1345 Lease," and the "5296 Lease" (collectively, the "Leases"), under which Ross has the right to operate its Ross Dress for Less and/or dd's Discounts retail stores in Landlords' shopping centers.  *See* Am. Compl. ¶¶ 15, 20, 25.  These three Leases (attached to the Amended Complaint as Exhibits 1, 3, and 5) all include the following highly relevant provisions governing the parties' rights and obligations— but which Plaintiffs inexplicably failed to bring to this Court's attention in either their Original or Amended Complaints.[1]  *See* Am. Compl. ¶¶ 16, 21, 26.

First, a tenant "default" under the Leases for failure to pay rent cannot occur "within ten (10) business days after Tenant's receipt of a written notice from Landlord specifying such failure."  Leases § 20.1.1(a).  In other words, Ross bargained for and is entitled to written notice

---

[1] This Motion quotes provisions from the 511 Lease (Exhibit 1 to the Amended Complaint).  The 1345 Lease and the 5296 Lease contain provisions with substantially the same language and conferring the same rights, with only minor and non-substantive differences.

and a full 10 business day cure period *before* Landlords can attempt to invoke the tenant default

provisions for failure to pay rent.[2]   Landlords have deprived Ross of that contractual right.

      Second, this same provision also expressly provides Ross the right to withhold rent

pursuant to a bona fide dispute:

> In the event Tenant withholds Rent pursuant to a bona fide dispute between Landlord and Tenant, and in accordance with the terms of this Lease, Tenant ***shall not be deemed in [sic] default under the provisions of this Lease.***   Tenant, however, agrees to pay any undisputed amount in the event of a bona fide dispute.

Leases § 20.1.1(a) (emphasis added).   The Leases also contain a similar "Disputed Sums"

provision that expressly provides Ross the right to withhold all other charges in the event of a

bona fide dispute:

> Disputed Sums.   Under the terms of this Lease numerous charges are and may be due from Tenant to Landlord and vice versa, including without limitation, real estate Taxes, Common Area Charges, casualty and liability insurance premium reimbursements and other items.   In the event that at any time during the Term a bona fide dispute arises with respect to the amount due for any of such charges claimed by a party to be due, that portion of the amount which is undisputed shall be paid by Tenant or Landlord, as the case may be, pending the resolution of the dispute between the parties by litigation or otherwise, and the disputed portion may be withheld pending resolution.   ***Tenant's withholding of a disputed amount in the event of a bona fide dispute shall not be deemed in [sic] default by Tenant under the terms of this Lease***.   Upon resolution, the obligated party shall pay to the other the remaining sum liquidated as due (if any) with interest thereupon at the Legal Rate.

---

[2] The full clause in the Leases (section 20.1.1, titled "Tenant's Default") provides as follows:

    (a) Breach.   The occurrence of either of the following shall constitute a default by Tenant pursuant to this Lease: (i) a failure by Tenant to pay Rent within ten (10) business days after Tenant's receipt of written notice from Landlord specifying such failure; or (ii) a failure by Tenant to perform obligations pursuant to this Lease, other than as specified in (i) above, within thirty (30) days after Tenant's receipt of written notice from Landlord specifying such failure or, if it reasonably would require more than thirty (30) days to cure such failure, within a time reasonably necessary to cure such failure after Tenant's receipt of such written notice provided, that Tenant has commenced curing same within the thirty (30) day period and is diligently attempting to cure same, and provided further that such cure period shall not exceed ninety (90) days after Tenant's receipt of such notice.   In the event Tenant withholds Rent pursuant to a bona fide dispute between Landlord and Tenant, and in accordance with the terms of this Lease, Tenant shall not be deemed in [sic] default under the provisions of this Lease.   Tenant, however, agrees to pay any undisputed amount in the event of a bona fide dispute.

511 Lease (Am. Compl. Ex. 1) § 6.4.3 (emphasis added).[3]

Third, the Leases contain a mandatory mediation provision that requires the parties to (a) first try in "good faith" to resolve any disputes by mediation, and (b) refrain from filing suit until 60 days after either party sends a notice requesting mediation:

> ***The parties shall first try in good faith to settle the Dispute by mediation*** pursuant to the provisions as set forth below. . . . The party commencing the Mediation shall first give a written notice (a "Mediation Notice") to the other party setting forth the nature of the Dispute. . . . ***If the Dispute or any part thereof has not been resolved by mediation as provided above within sixty (60) days after receipt of the Mediation Notice***, or if a party fails to participate in Mediation, ***then*** at the option of either party by written notice, the Dispute shall be determined by suit or action in court, unless it is a matter for Arbitration as described in Section 20.2.1. above.

Leases § 20.2.2 Mediation (emphasis added).  Thus, ***only after*** mandatory mediation has failed may a party proceed to court for resolution of a dispute. *See id.*

Moreover, this mandatory mediation provision applies to any disputes between the parties that exceed a monetary value of $50,000 (as does the dispute here):

> Means of Resolution. In the event that ***any controversy or dispute*** ("Dispute") shall arise under this Lease and in the event that the parties have been unable to resolve such Dispute within thirty (30) days, the Dispute shall be resolved as provided in this Section 20.2. ***All Disputes, the monetary value of which exceeds Fifty Thousand Dollars ($50,000)***, or which involve an equitable remedy, ***shall require the utilization of Mediation as provided in Section 20.2.2 below***. All Disputes, the monetary value of which is less than Fifty Thousand Dollars ($50,000) shall be settled by Arbitration as discussed in Section 20.2.3 below.

Leases § 20.2.1 Alternative Dispute Resolution (emphasis added).  Landlords flagrantly disregarded these mandatory mediation requirements by initiating this lawsuit when and how they did.

---

[3] The Disputed Sums clause in the 1345 Lease and the 5296 Lease appears in section 6.3.3.

Fourth, under section 20.1.1(c) in the Leases, titled "Prohibition Against Landlord Accelerating Rent," Landlords have no right to accelerate Ross' monthly rent obligations unless Landlords also seek to terminate the Leases (which Landlords have not sought to do):

> (i)   Except as provided in Section 20.1.1(c)(2) [sic] below, and whether or not Landlord terminates this Lease, Tenant shall have no obligation to pay Rent until the date it would otherwise be due in the absence of Tenant's default. ***Landlord shall have no right to accelerate Rent which would become due except as provided hereafter***.
>
> (ii)   ***In the event Landlord terminates this Lease*** due to a default by Tenant, Landlord may recover from Tenant the balance of the Rent payable by Tenant for the remainder of the Term, minus the fair market rental value of the Store for such period, each discounted to present value using a discount rate of the Federal Reserve Bank of San Francisco at the time of the award, plus one percent (1%) per annum, together with costs and expenses proximately caused by Tenant's breach of the Lease.

Leases § 20.1.1(c) (emphasis added).   Therefore, there is no basis for Landlords to claim accelerated rent.

## II.   Landlords Prematurely File Suit and Ignore Ross' Rights Under the Governing Leases

As Landlords acknowledge in their Amended Complaint, countless individuals and businesses around the globe have suffered and continue to suffer from the devastating personal and financial hardships caused by the ongoing COVID-19 pandemic.   *See* Am. Compl. ¶ 4. Governor DeSantis has issued executive orders declaring a state of emergency and restricting public access to, and the operations of, non-essential businesses to protect the health and safety of the public.[4]   Ross, therefore, was forced to temporarily close all of its stores beginning on

---

[4] *See* Office of the Governor Executive Order No. 20-52 (March 9, 2020 Order declaring a state of emergency for the entire State of Florida); No. 20-89 (March 30, 2020 Order restricting public access to non-essential businesses); No. 20-112 (May 4, 2020 Order restricting retail stores from operating at more than 25% of their building occupancy); *see also Harvey v. United States*, No. 15-CV-24438-ALTONAGA, 2017 U.S. Dist. LEXIS 4152, at *23 (S.D. Fla. Jan. 10, 2017) (in ruling on a motion to dismiss, the court may take judicial notice of certain facts and public records because they are capable of accurate and ready determination).

March 20, 2020,[5] and nearly all of its stores (including store numbers 511, 1345, and 5296 referred to in Landlords' Amended Complaint) will remain closed through at least late May 2020.[6]

In light of these unprecedented circumstances, Ross has made (and will continue to make) repeated efforts to engage in good faith negotiations with all of its landlords (including the Landlords in this case) about a mutually beneficial path forward in the face of this pandemic. *See* Am. Compl. Exs. 7–11. Indeed, and notwithstanding the temporary closure of its stores, Ross ensured at the outset of this unanticipated crisis that Landlords received April rent payments to assist them with weathering this storm and stabilizing their cash flow with respect to smaller tenants—while reserving all rights. *See* March 31, 2020 Ltr. (Am. Compl. Ex. 7). Such actions clearly belie Landlords' claim that Ross implemented a "predetermined, national policy of refusing to pay rent when due." Am. Compl. ¶ 34.

Ross subsequently sent a *proposal* to Landlords on April 9 for temporary rent abatement and reduction, the terms and conditions of which were intended to serve as a starting point for negotiations between the parties. *See* April 9, 2020 Letter ¶ 11 (Am. Compl. Ex. 8) ("terms and conditions are intended to ***serve as the basis for negotiating and drafting a definitive lease amendment*** incorporating the terms and conditions stated herein ***as well as others to be determined***.") (emphasis added). And while Landlords' counter-proposal sent on April 22 was not acceptable, Ross never made (and Landlords fail to plead that Ross has ever made) any

---

[5] *See* March 20, 2020 press release, available at: https://investors.rossstores.com/news-releases/news-release-details/ross-stores-provides-additional-covid-19-related-update; April 2, 2020 press release, available at: https://investors.rossstores.com/news-releases/news-release-details/ross-stores-provides-additional-covid-19-business-update.

[6] The contractual requirements in the Leases that render the Landlords' Amended Complaint unripe and premature still apply and support dismissal even though the stores at issue in this suit re-opened in late May (at 50% capacity as required by local government orders).

unequivocal or absolute statements cutting off and/or refusing to engage in further negotiations with Landlords.  *See* Am. Compl. Exs. 9-10. To the contrary, Ross' April 30 Letter expressly invites and encourages Landlords to contact any of Ross' four authorized senior real estate executives to "get this issue resolved promptly."  *See* Am. Compl. Ex. 11.  In sum, all of the correspondence attached to Landlords' Amended Complaint actually undermines their allegations that further negotiations were supposedly "cut off" and/or "futile."  *See* Am. Compl. ¶ 43.

Notwithstanding the bona fide dispute evidenced by the correspondence attached to the Amended Complaint, Landlords allege that Ross breached the Leases by failing to pay Rent and other charges due on May 1, 2020.[7]  Am. Compl. ¶¶ 5, 41.  Noticeably absent from the Amended Complaint, however, are any sufficient allegations confirming that Landlords satisfied all of the required conditions precedent *before* they filed suit on May 4, 2020 (because they did not do so and, therefore, cannot make such allegations).  For example, Landlords fail to allege that they provided Ross with a notice of default on or after May 1 for not paying May rent or afforded Ross its right to a 10 business day cure period after receiving such notice from Landlords. Indeed, it is impossible for Landlords to have provided the required 10 business day cure period here given that they filed suit only three days (and on the next business day) after they claim rent was due on May 1, 2020.  Moreover, Landlords fail to allege that they made a good faith attempt to mediate this dispute *prior to* filing suit, as required under the governing Leases.  Furthermore, Landlords expressly allege that they are not seeking to terminate the Leases in this action— which is a requirement for seeking accelerated Rent.  *See* Am. Compl. ¶ 70 n.2.  Landlords'

_____

[7] For the avoidance of doubt, Ross disputes that it breached the Leases by withholding May rent and reserves all rights to later raise its arguments on the merits should the Court decline to grant its Motion to Dismiss the Amended Complaint based on the significant pleading deficiencies discussed in this Motion.

representation to the Court in their Amended Complaint that "[a]ll conditions precedent to the filing of this action have been fulfilled, satisfied, waived, excused, or are futile" is, therefore, facially inaccurate and fatally deficient.

Landlords also allege that Ross committed an anticipatory repudiation, citing to the Leases' force majeure provisions to support their claims. *See* Am. Compl. ¶¶ 79-81.  But Ross' prior correspondence to Landlords never invokes or even refers to the Leases' force majeure provisions. *See generally* Am. Compl. Exs. 7, 8, 10, 11, 14.  Instead, and as discussed, Ross advanced April rent and encouraged Landlords to negotiate with it in good faith amid the current crisis, while giving notice of circumstances giving rise to a bona fide dispute.  *See* April 30 Letter (Am. Compl. Ex. 11).  As for May rent, Ross informed Landlords that:  "unless we can come to an agreement, Ross does not intend to advance rent or additional charges for the month of May 2020 or possibly thereafter . . . ."  *See id.*  However, Ross' April 30 Letter contains no definitive statements that Ross intended to or did waive any of its rights under the Leases, including those discussed herein regarding notice, withholding disputed sums, cure periods, or mediation.  *See id.*  Landlords also do not allege in their Amended Complaint that Ross otherwise informed them that it intended to waive such rights.  *See id.*  To the contrary, Ross' April 30 Letter represented Ross' clear effort to engage Landlords in a discussion regarding the rent dispute, which should have led to a number of steps, including, but not limited to, notice, a cure period, and mediation provided for in the Leases.

In response to Ross' April 30 Letter, Landlords unfortunately did not attempt to negotiate in good faith nor honor Ross' contractual right to a 10 business day cure period—as required under the governing Leases.  Rather, Landlords prematurely and brazenly filed their Original Complaint on May 4, 2020.  ECF No. 1.  That same day, Landlords sent Ross a letter from their

counsel demanding payment of May rent. *See* Am. Compl. Ex. 12.  Then, on May 5, 2020—in a deficient attempt to make up for one of their fatal mistakes in rushing to the courthouse and violating Ross' rights under the Leases—Landlords sent Ross an untimely letter raising the possibility of mediation.  *See* Am. Compl. Ex. 13.  Because Landlords had already violated the pre-suit mediation requirements in the governing Leases, Ross thus responded on May 13: (a) declining to respond to Landlords' untimely request at this time, (b) informing Landlords that it would file an appropriate response in this litigation, and (c) reminding Landlords that a bona fide dispute exists regarding rent payments pursuant to section 21.2.2 of the Leases.  *See* May 13, 2020 Letter (Am. Compl. Ex. 14).

In sum, Landlords committed a number of fatal errors in filing the Original Complaint as they did, none of which were (or even could be) cured in their Amended Complaint.

## **ARGUMENT**

I. **Landlords' Amended Complaint Must be Dismissed Under Rule 12(b)(1) for Lack of Subject Matter Jurisdiction**

A. Subject Matter Jurisdiction and the Rule 12(b)(1) Standard

When a defendant asserts a 12(b)(1) factual attack on subject matter jurisdiction, the court is permitted to take into account extrinsic evidence in incorporated documents and in such instances does not need not presume the truthfulness of the allegations set forth in the complaint. *See IVX Animal Health, Inc. v. Burger*, 475 F. Supp. 2d 1264, 1266 (S.D. Fla. 2007) (citing *Morrison v. Amway Corp.*, 323 F. 3d 920, 925 n. 5 (11th Cir. 2003)).  As the Eleventh Circuit has upheld, "[b]ecause at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the

evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir.1990)).[8]

Here, Ross asserts a factual attack rather than a facial attack because it does not challenge subject matter jurisdiction based solely upon the allegations in the Amended Complaint.  Instead, Ross relies upon the clear language of the Leases (which, notably, belie the allegations in the Amended Complaint), as well as the underlying factual circumstances evidenced by the correspondence attached to the Amended Complaint (from which Landlords only highlight cherry-picked and out-of-context statements).

     B.    <u>All of Landlords' Claims Are Premature</u>

A motion to dismiss under Rule 12(b)(1) is the proper vehicle for challenging a premature claim for breach of contract.  *See Elend v. Basham*, 471 F.3d 1199, 1204 (11th Cir. 2006); *PTA-FLA, Inc. v. ZTE USA, Inc.*, No. 3:11-cv-510-J-32JRK, 2011 WL 5024647, at *1 (M.D. Fla. Oct. 21, 2011).  Here, the Amended Complaint must be dismissed under Rule 12(b)(1) because: (1) Landlords have not, and could not have possibly, satisfied the conditions precedent to filing suit, and (2) Landlords' claims are not ripe for judicial review.

         *1.    Landlords Failed to Satisfy the Conditions Precedent Before Filing Suit*

As described above, the Leases impose conditions precedent to Landlords filing suit against Ross—none of which Landlords have satisfied.  Most significantly, the Leases required Landlords to *first* try in "good faith" to resolve any disputes with Ross involving more than $50,000 in monetary value (as the instant dispute seeking a multi-million dollar damages award clearly does) by mediation and refrain from filing suit until 60 days after the date of a written mediation notice.  *See* Leases §§ 20.2.1, 20.2.2.  Landlords, however, fail to allege in their

---

[8] Should the Court instead apply a Rule 12(b)(6) standard in analyzing the arguments in this section, Ross contends that the arguments equally apply and warrant dismissal under both Rules 12(b)(1) and 12(b)(6).

Amended Complaint that they satisfied any of these requirements.  Nor could they have, as they rushed to file their Original Complaint three days (and on the next business day) after rent was allegedly due on May 1 and did not initiate discussions regarding mediation until the day *after* filing their Original Complaint.

Moreover, Landlords' new allegation that mediation would have been "futile" based on correspondence exchanged *after* the Landlords violated Ross' pre-suit rights misses the point. *See* Am. Complaint §§ 47–49.  Ross made clear in its pre-suit correspondence that it was and remained willing to engage in good faith negotiations with the Landlords to resolve this bona fide dispute.  And Ross looks forward to continuing those good faith negotiations and/or participating in a mandatory mediation after this improvidently-filed lawsuit is dismissed.

Furthermore, this Court should not entertain Landlords' odd new allegation that mediation was supposedly not a precondition to filing an action for damages, when even a cursory reading of the relevant provisions in the governing Leases shows that such a statement is unsupported and unsupportable.  *See* Am. Compl. ¶ 47, n.1.[9]  On this basis alone, the Court should dismiss the Amended Complaint in its entirety.  *See Fla. Power & Light Co. v. Bellsouth Telecomms., LLC*, Case No. 19-81043-CIV-ROSENBERG/REINHART, 2020 U.S. Dist. LEXIS 21536, at *15 (S.D. Fla. Jan. 31, 2020) ("[W]here the parties' agreement requires mediation as a condition precedent to arbitration or litigation, the complaint must be dismissed.") (citing *Mullales v. Aspen Am. Ins. Co.*, No. 18-23661-CIV-MORENO, 2018 WL 6270974, at *1 (S.D.

---

[9] *See* Leases § 20.2.1 ("In the event that *any controversy or dispute ("Dispute")* shall arise under this Lease and in the event that the parties have been unable to resolve such Dispute within thirty (30) days, *the Dispute shall be resolved as provided in this Section 20.2. All Disputes, the monetary value of which exceeds Fifty Thousand Dollars ($50,000)*, or which involve an equitable remedy, *shall require the utilization of Mediation as provided in Section 20.2.2 below*"); § 20.2.2 (emphasis added) ("The *parties shall first try in good faith to settle the Dispute by mediation* pursuant to the provisions as set forth below.") (emphasis added); § 20.3 (separately providing that Landlord agrees not to file, prosecute, or maintain a proceeding for evictions, unlawful detainer, or termination of the Lease during the alternative dispute resolution process set forth in section 20.2).

11

Fla. Nov. 29, 2018) (dismissing plaintiff's complaint for failing to satisfy the required mediation before filing suit).

Landlords also similarly failed to comply with the required notice and cure provisions under the Leases. They did not send Ross a notice letter alleging default until May 4. In addition, section 20.1.1 in the Leases provides that nonpayment of rent is not a default until 10 business days after Ross' receipt of a written notice of default. Therefore, a default has not yet even occurred, and the Amended Complaint should be dismissed for permanently depriving Ross of its cure rights. *See Charles v. Deutsche Bank Nat'l Trust Co.*, No. 1:15-cv-21826-KMM, 2016 WL 950968, at *3–4 (S.D. Fla Mar. 14, 2016) (dismissing plaintiff's complaint for failing to allege compliance with the contract's pre-suit notice and cure requirements).

### 2.     *Landlords' Claims for Breach and Anticipatory Repudiation Are Unripe for Additional Reasons*

A claim for breach of contract is not ripe for judicial review when the defendant's conduct falls within the defendant's rights afforded by the contract and the prospect of a breach resulting from that conduct remains speculative. *See Moynihan v. W. Coast Life Ins., Co.*, 607 F. Supp. 2d 1336, 1339 (S.D. Fla. 2009) (granting motion to dismiss because plaintiffs' claims against an insurance company for withholding payment while the company was conducting a contractually permitted investigation were not ripe).

Here, Landlords allege that Ross breached the Leases by failing to pay rent and other charges due on May 1, 2020. Am. Compl. ¶¶ 5, 41. But as previously discussed, the Leases expressly provide that (1) Ross has the right to withhold rent and other charges pursuant to a bona fide dispute and (2) such withholding shall *not* constitute a default by Ross. 511 Lease (Am. Compl. Ex. 1) §§ 6.4.3, 20.1.1(a). In other words, as of the date the Amended Complaint was filed, Ross could not possibly have been in breach of the Leases for simply exercising its

12

contractual right to withhold rent—particularly when the parties had also not yet satisfied their obligation to first try in good faith to resolve this dispute through mediation.  In fact, Ross addressed the bona fide dispute existing with respect to its rent in its April 30 Letter.  *See* Am. Compl. Ex. 11.  That letter stated "[y]ou are a landlord who we have yet to reach an agreement with in good faith amid the crisis" and "we have been unable to engage in constructive discussions with you with respect to rent payments amid these unforeseen and unanticipated circumstances."  *Id.*  It was a clear step in what should have been a series of steps involving at the very least, notice, a cure period, and mediation pursuant to the parties' rights under the Leases.  But Landlords did not engage.  Indeed, Ross provided even further information regarding the bona fide dispute existing with respect to rent in its May 13 Letter, because Landlords deprived Ross of its right to respond to Landlords' May 4 Default Letter during a 10-business day cure period and before Landlords filed suit on May 4.  *See* Am. Compl. Ex. 14. Simply put, Landlords deprived Ross of any right to follow-up on its April 30 Letter and refused to participate in good faith negotiations as required under the Leases.  Accordingly, as in *Moynihan*, the Amended Complaint here fails to plausibly allege the existence of a justiciable controversy.  But even if a justiciable controversy existed (it does not as demonstrated by the context of the April 30 Letter), the statements allegedly constituting Ross' anticipatory repudiation in the April 30 Letter also do not even come close to the "distinct, unequivocal, and absolute" statements or actions required for an anticipatory breach.  *See* Section II.C *infra*.

C.    Landlords' Claim for Declaratory Judgment Lacks a Case or Controversy Because Ross Has Not Invoked the Force Majeure Clause

The law is well-settled that a court may not render an opinion on the enforceability of a contractual provision that is not in dispute between the parties.  *See, e.g., Trianon Condo. Ass'n, v. QBE Ins. Corp.,* 741 F. Supp. 2d 1327, 1331 (S.D. Fla. 2010) ("The present case is no

different than a lawsuit which may have been brought by Plaintiff immediately after the parties entered into the contract.  If [defendant] never takes any action to enforce the [challenged provision], a judicial determination as to the enforceability of the [challenged provision] in question is purely advisory.").  Indeed, even if a plaintiff suspects that a defendant may later invoke a provision, that suspicion alone does not create a justiciable controversy.  *See e.g.*, *Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.*, 68 F.3d 409, 415 (11th Cir. 1995) ("Regardless of how well-founded AGL's concerns about its insurers may have been, speculation based on the insurance companies' dealings with other insureds does not present a concrete case or controversy.").

Plaintiffs once again raise a red herring by pointing to the inapplicability of any force majeure provision in their Amended Complaint and stating "since the provision is not applicable, and the Tenant's failure to pay rent is not excused, there is no contractual basis for the Tenant to avoid its obligation to pay rent."  Am. Compl. ¶ 32.  The actual correspondence attached to the Amended Complaint, and upon which Landlords' allegation is based, does not invoke or even mention the force majeure provision in the Leases.  *See* Am. Compl. Exs. 7–11.  Ross is not arguing the force majeure provision in the Leases is a basis for dismissal of the Amended Complaint. Accordingly, Landlords' declaratory relief claim concerning enforceability of the force majeure provision in the Leases must be dismissed at this stage as seeking an improper advisory opinion.  *See Atlanta Gas Light Co.*, 68 F.3d at 414; *Trianon,* 741 F. Supp. 2d at 1331.

## II.     Landlords' Amended Complaint Must Be Dismissed Under Rule 12(b)(6) for Failing to State a Claim Upon Which Relief May Be Granted

### A.     The Rule 12(b)(6) Standard

While the court accepts a plaintiff's well-pleaded facts as true in deciding a 12(b)(6) motion, it need not accept "conclusory allegations, unwarranted deductions of fact, or legal

conclusions masquerading as facts" as is well-established under the *Iqbal* and *Twombly* progeny. *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).   In addition, allegations that describe lawful conduct that might be part of unlawful activity fail to satisfy the pleading requirements under Rule 12(b)(6).  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007) (dismissing claim where allegations, taken as true, did not amount to unlawful conduct without more, even though that conduct was consistent with the unlawful activity charged).   In other words, factual allegations must rise above mere speculation.  *Id.*  Moreover, "when exhibits attached to a complaint 'contradict the general and conclusory allegations of the pleading, the exhibits govern.'"  *Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511, 514 (11th Cir. 2019) (citing *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199 (11th Cir. 2007) ("Conclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint.  If the appended document ... reveals facts which foreclose recovery as a matter of law, dismissal is appropriate.")).

Here, not only are Landlords' allegations entirely conclusory, but they also fly in the face of the clear language in the Leases and the correspondence attached as exhibits to Landlords' Amended Complaint.  For these reasons, their Amended Complaint fails to state a claim for any basis of relief.

B.   Landlords Fail to Allege a Valid Claim for Accelerated Rent

Landlords assert a claim for accelerated rent in their Amended Complaint "[p]ursuant to Article 20 of the Leases, and applicable Florida law."   Am. Compl. ¶¶ 62–70.   However, section 20.1.1(c) in the Leases expressly prohibits Landlords from recovering accelerated rent unless they also terminate the Leases.   And here, Landlords make clear in their Amended

Complaint that they are not seeking to terminate the Leases or Ross' right to possession of the premises.  *See* Am. Compl. ¶ 70 n.2.  Nor could Landlords terminate the Leases even if they chose to do so.  Landlords also fail to identify any Florida statutory or common law that would override the parties' agreement or otherwise permit Landlords to recover accelerated rent without satisfying the condition of terminating the Leases.  Landlords' claim for accelerated rent, therefore, must be dismissed.

       C.     <u>Landlords Fail to Allege Sufficient Facts to Support a Claim for Anticipatory Repudiation</u>

An anticipatory breach of a contract requires an "absolute repudiation by one of the parties prior to the time when his performance is due under the terms of the contract." *Mori v. Matsushita Elec. Corp. of Am.,* 380 So.2d 461, 463 (Fla. 3d DCA 1980).  The repudiation must be "distinct, unequivocal, and absolute." *Palm Beach Int'l, Inc. v. Salkin*, No. 10-60995-CIV, 2010 WL 5418995, at *4–5 (S.D. Fla. Dec. 23, 2010) (citation omitted).  A mere statement that a party does not intend to carry out his agreement before the time for performance does not give the other party an immediate cause of action for breach or anticipatory breach. *Slaughter v. Barnett*, 114 Fla. 352, 364 (1934).

In support of their anticipatory repudiation claim, Landlords allege that "Tenant, moreover, has further advised that is [sic] 'withholding rent' and that its non-payment of Rent will continue, which is an anticipatory repudiation and breach of its ongoing payment obligations under the Leases."  Am. Compl. ¶¶ 68, 76, 80.  However, this conclusory allegation fails to identify any "distinct, unequivocal, and absolute" statements made by Ross.  The reason is obvious: Ross never made any such statements to Plaintiffs, and Plaintiffs cannot credibly allege that Ross did.  In reality, and as evidenced by Ross' April 30 Letter attached to the Amended Complaint, Ross merely stated an intention to not advance rent and other charges for the month

of May and only "*possibly* thereafter" until its business has been re-established.  *See* Am. Compl. Ex. 11 (emphasis added).  Under Florida law, these statements—along with those such as "we'll just go from here" made by Ross during prior negotiations—do not come close to the "distinct, unequivocal, and absolute" statements or actions required for an anticipatory breach.  Nor do any statements in Ross' May 13, 2020 Letter responding to a letter sent by Landlords *after* they filed suit.  Instead, Ross' May 13 letter simply reiterated that a bona fide dispute exists with respect to rent and further notified Landlords that Ross intended to file an appropriate response in the litigation to Landlords' untimely mediation request.   Therefore, Plaintiffs' anticipatory repudiation claims—regardless of whether such claims are based on Ross' pre or post-litigation correspondence—should be dismissed.

For all of the reasons discussed in this Motion, Plaintiffs' claims against Ross as guarantor should also be dismissed.  Am. Compl. ¶¶ 71–77; *see Fed. Deposit Ins. Corp. v. Univ. Anclote, Inc.*, 764 F.2d 804, 806 (11th Cir. 1985) ("A guarantor is liable only in the event and to the extent that his principal is liable.") (citation omitted); 28 Fla. Jur. 2d Guaranty and Suretyship § 13 (2020).

**III.**     **Should the Court Grant the Motion, Ross is Entitled to and Fully Intends to Seek Attorneys' Fees from Landlords**

Should the Court grant the Motion and dismiss the Amended Complaint, Ross reserves any and all of its rights to seek attorneys' fees pursuant to the clear language in the Leases, the clear language in the guaranty, and Florida law.

<strong>CONCLUSION</strong>

For these reasons, Defendants respectfully request that the Court dismiss the Amended Complaint with prejudice.  Defendants further request all other relief, at law or in equity, to which they are justly entitled.

17

Dated:  May 26, 2020           Respectfully submitted,

*/s/ Edward Soto*
Edward Soto (Fla. Bar No. 0265144)
Edward.Soto@weil.com
Nicole Comparato (Fla. Bar No. 0293239)
Nicole.Comparato@weil.com
**WEIL, GOTSHAL & MANGES LLP**
1395 Brickell Avenue, Suite 1200
Miami, Florida 33131
Telephone:  (305) 577-3100

Paul R. Genender (*pro hac vice pending*)
Paul.Genender@weil.com
Nathan White (*pro hac vice pending*)
Nathan.White@weil.com
**WEIL, GOTSHAL & MANGES LLP**
200 Crescent Court, Suite 300
Dallas, Texas 75201
Telephone: (214) 746-7700

***Attorneys for Defendants***
***Ross Dress for Less, Inc., and Ross Stores, Inc.***

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 26, 2020, I electronically filed the foregoing with the Clerk

of the Court for the United States District Court for the Southern District of Florida by using the

CM/ECF system.  As such, the foregoing was served electronically upon all counsel of record.


*/s/ Edward Soto*
Edward Soto (Fla. Bar No. 0265144)
Edward.Soto@weil.com
**WEIL, GOTSHAL & MANGES LLP**
1395 Brickell Avenue, Suite 1200
Miami, Florida 33131
Telephone:  (305) 577-3100