### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

### CASE NO. 20-21865-CIV-MORENO/GOODMAN

PALM SPRINGS MILE ASSOCIATES, LTD., et al.,

     Plaintiffs,

v.

ROSS DRESS FOR LESS, INC., et al.,

     Defendants.

_____/

### ORDER ON CROSS-MOTIONS FOR "PREVAILING PARTY" ATTORNEY'S FEES

     Vince Lombardi (1913 – 1970) is one of the most-famous coaches in NFL history. A former head coach of the Green Bay Packers during the 1960s, Lombardi led the team to three straight and five total NFL championships in seven years and won the first two Super Bowls at the end of the 1966 and 1967 seasons. Although he died more than 50 years ago, the NFL Super Bowl trophy was named in his honor and still carries that name today. He is famous for saying, among other things, "Winning isn't everything, it's the only thing."[1]

     Lombardi's seemingly-basic saying about the importance of winning may appear straightforward, but it is problematic to apply here, in a post-voluntary dismissal

_____

[1]    https://www.brainyquote.com/quotes/vince_lombardi_115467 (last visited October 23, 2020).

scenario. That's because *both* sides claim to be the winner -- i.e., the "prevailing party" under the applicable commercial leases. Both the two landlords who filed this lawsuit and the two Defendants (the tenant and its guarantor) seek attorney's fees as the purported winners.

Plaintiffs (Palm Springs Mile Associates, Ltd. and Philips Lake Worth LLC) say they are the prevailing parties because their lawsuit caused Defendants (Ross Dress for Less, Inc. and Ross Stores, Inc.) to pay in full what they owed in unpaid rents (more than $250,000) and to "recommit" their ongoing lease payment obligations for two additional months. But Defendants say that *they* prevailed because (1) the landlords' lawsuit was improvidently filed; (2) the two monthly payments were made under protest and under duress; (3) the landlords were seeking $5.5 million in accelerated rent and a declaratory judgment and never obtained that relief; and (4) the landlords voluntarily dismissed their entire lawsuit, thereby wasting the Defendants' time (and the Court's time) by litigating premature claims.

After voluntarily dismissing their lawsuit [ECF No. 22], and after the Court dismissed the case without prejudice [ECF No. 23], Plaintiffs filed [ECF No. 24] a motion for attorney's fees, seeking $40,095.50 [ECF No. 27, p. 12]. Defendants' later-filed fees motion [ECF No. 25] seeks a reduced amount of $151,291.55 (of more than $329,000 incurred). United States District Judge Federico A. Moreno referred the competing attorney's fees motions to the Undersigned. [ECF No. 30]. The parties then filed a consent

for the Undersigned to conduct all proceedings concerning the pending fees motions and the entry of a final judgment without the need for a Report and Recommendation. [ECF No. 49]. United States District Judge Federico A. Moreno then reassigned the case to me. [ECF No. 50].

Coach Lombardi's well-known quote assumes that one of two sides will in fact clearly and cleanly win and that the other side will undoubtedly lose. It does not (in a litigation setting) contemplate a scenario where there is no trial and no substantive ruling (e.g., an order granting a motion to dismiss or a summary judgment motion). Similarly, the Lombardi quote does not squarely address a scenario where each side might be deemed a partial winner and a partial loser, or when the litigation contest stopped when the sponsor (i.e., Plaintiffs) ended the battle. So perhaps two other Coach Lombardi quotes could apply here: "We didn't lose the game; we just ran out of time"[2] and "Show me a good loser and I'll show you a loser."[3]

In any event, motivated by Coach Lombardi's wisdom, and for the legal reasons outlined in greater detail below, the Undersigned concludes that **neither side** is the prevailing party for purposes of their fees motions and **denies both motions**.

By way of introductory summary, compelling circumstances permit a trial court

---

[2]      https://www.brainyquote.com/quotes/vince_lombardi_103598      (last      visited October 23, 2020).

[3]      https://www.brainyquote.com/quotes/vince_lombardi_161268      (last      visited October 23, 2020).

to find an exception to the general rule (under Florida law) that the court **must** find that *one* of the parties to a contract prevailed when there is a prevailing party attorney's fee provision in the contract. As discussed below, both sides won and lost some claims, in a manner of speaking.

Moreover, because there is no verdict, order, or substantive ruling in favor of either side, and because there are four counts in the Amended Complaint, it is difficult to determine which party is the prevailing party.

In addition, without a trial or evidentiary hearing, it is also a challenge to discern the motivation for Defendants' payment of the two months of unpaid rent: was it the filing of the lawsuit or was it because Government Covid-19 restrictions eased, permitting Defendants to open their stores?

Similarly, relying solely on attorney rhetoric to conclusively determine Plaintiffs' motivation for voluntarily dismissing the lawsuit could be an unreliable method to answer a critical question: Did the Plaintiff landlords dismiss the Amended Complaint because they were seeking to avoid an adverse ruling on the motion to dismiss, or because they could no longer in good faith persist with the allegation that the Defendant tenants anticipatorily repudiated the Leases after the tenants paid the unpaid rent?

Given these dynamics and the uncertainty inherent in the record, the Undersigned concludes that it is prudent to invoke the compelling circumstances exception here.

I.      **Factual and Procedural Background**

a.  **The Leases**

Defendants operate retail clothing stores at three locations leased from Plaintiffs. Three leases are at issue in the case: the 511 Lease (for the Ross Dress for Less Store 511 in Hialeah); the 1345 Lease (for the Ross Dress for Less Store 1345 in Lake Worth); and the 5296 Lease (for the DD Store 5296 in Lake Worth). The 511 Lease expires on January 31, 2022; the 1345 Lease expires on January 31, 2026; and the 5296 Lease expires on January 31, 2027.

When Plaintiffs filed their lawsuit on May 4, 2020 [ECF No. 1], the total rent and other charges for the remaining terms of the lease were more than $1.1 million for the 511 Lease, more than $2.4 million for the 1345 Lease, and more than $2 million on the 5296 Lease. In other words, more than $5.5 million was owed for the remaining terms on all three leases combined.

Each of the three Leases[4] include provisions which Defendants highlight in their motions to dismiss [ECF Nos. 7; 14] the Complaint, and the Amended Complaint [ECF Nos. 1; 13]:

First, a tenant "default" under the Leases for failure to pay rent cannot occur "within ten (10) business days after Tenant's receipt of a written notice from Landlord

---

[4]      All three leases contain provisions with substantially the same language on the points discussed here.

specifying such failure." [ECF No. 1-8, p. 69, Leases § 20.1.1(a)]. In other words, Ross

bargained for, and is entitled to, written notice and a full 10 business day cure period

before Landlords can attempt to invoke the tenant default provisions for failure to pay

rent.[5]

Second, this same provision also expressly provides Ross the right to withhold

rent pursuant to a bona fide dispute:

> In the event Tenant withholds Rent pursuant to a bona fide dispute between
> Landlord and Tenant, and in accordance with the terms of this Lease,
> Tenant shall not be deemed in [sic] default under the provisions of this
> Lease. Tenant, however, agrees to pay any undisputed amount in the event
> of a bona fide dispute.

---

[5]    The full clause in the Leases (Section 20.1.1, titled "Tenant's Default") provides as
follows:

> (a) Breach. The occurrence of either of the following shall constitute a
> default by Tenant pursuant to this Lease: (i) a failure by Tenant to pay Rent
> within ten (10) business days after Tenant's receipt of written notice from
> Landlord specifying such failure; or (ii) a failure by Tenant to perform
> obligations pursuant to this Lease, other than as specified in (i) above,
> within thirty (30) days after Tenant's receipt of written notice from
> Landlord specifying such failure or, if it reasonably would require more
> than thirty (30) days to cure such failure, within a time reasonably necessary
> to cure such failure after Tenant's receipt of such written notice provided,
> that Tenant has commenced curing same within the thirty (30) day period
> and is diligently attempting to cure same, and provided further that such
> cure period shall not exceed ninety (90) days after Tenant's receipt of such
> notice. In the event Tenant withholds Rent pursuant to a bona fide dispute
> between Landlord and Tenant, and in accordance with the terms of this
> Lease, Tenant shall not be deemed in [sic] default under the provisions of
> this Lease. Tenant, however, agrees to pay any undisputed amount in the
> event of a bona fide dispute.

*See* ECF No. 1-8, pp. 69-70.

[ECF No. 1-8, pp. 69-70, Leases § 20.1.1(a)].

Third, the Leases also contain a similar "Disputed Sums" provision that expressly provides Ross the right to withhold all other charges in the event of a bona fide dispute:

> Disputed Sums. Under the terms of this Lease numerous charges are and may be due from Tenant to Landlord and vice versa, including without limitation, real estate Taxes, Common Area Charges, casualty and liability insurance premium reimbursements and other items. In the event that at any time during the Term a bona fide dispute arises with respect to the amount due for any of such charges claimed by a party to be due, that portion of the amount which is undisputed shall be paid by Tenant or Landlord, as the case may be, pending the resolution of the dispute between the parties by litigation or otherwise, and the disputed portion may be withheld pending resolution. Tenant's withholding of a disputed amount in the event of a bona fide dispute shall not be deemed in [sic] default by Tenant under the terms of this Lease. Upon resolution, the obligated party shall pay to the other the remaining sum liquidated as due (if any) with interest thereupon at the Legal Rate.

*Id.* at p. 36, Leases § 6.3.3.

Fourth, the Leases contain a mandatory mediation provision that requires the parties to (a) first try in "good faith" to resolve any disputes by mediation, and (b) refrain from filing suit until 60 days after either party sends a notice requesting mediation:

> **The parties shall first try in good faith to settle the Dispute by mediation** pursuant to the provisions as set forth below. . . . The party commencing the Mediation shall first give a written notice (a "Mediation Notice") to the other party setting forth the nature of the Dispute. . . . **If** the Dispute or any part thereof has not been resolved by mediation as provided above within sixty (60) days after receipt of the Mediation Notice, or if a party fails to participate in Mediation, **then** at the option of either party by written notice, the Dispute shall be determined by suit or action in court, unless it is a matter for Arbitration as described in Section 20.2.1. above.

*Id.* at p. 72, Leases § 20.2.2 Mediation (emphasis added).

Thus, Ross says, only after mandatory mediation has failed may a party proceed to court for resolution of a dispute.

Moreover, this mandatory mediation provision applies to any disputes between the parties that exceed a monetary value of $50,000:[6]

> Means of Resolution. In the event that any controversy or dispute ("Dispute") shall arise under this Lease and in the event that the parties have been unable to resolve such Dispute within thirty (30) days, the Dispute shall be resolved as provided in this Section 20.2. **All Disputes**, the monetary value of which exceeds Fifty Thousand Dollars **($50,000)**, or which involve an equitable remedy, **shall require the utilization of Mediation** as provided in Section 20.2.2 below. All Disputes, the monetary value of which is less than Fifty Thousand Dollars ($50,000) shall be settled by Arbitration as discussed in Section 20.2.3 below.

*Id.* at pp. 65-66, Leases § 20.2.1 Alternative Dispute Resolution (emphasis added).

Fifth, under section 20.1.1(c) in the Leases, titled "Prohibition Against Landlord Accelerating Rent," Landlords (Plaintiffs) have no right to accelerate Ross' monthly rent obligations unless Landlords also seek to **terminate** the Leases (which Landlords have not sought to do):

> (i)      Except as provided in Section 20.1.1(c)(2) [sic] below, and whether or not Landlord terminates this Lease, Tenant shall have no obligation to pay Rent until the date it would otherwise be due in the absence of Tenant's default. **Landlord shall have no right to accelerate Rent which would become due except as provided hereafter.**

---

[6]      All claims in the Complaint and Amended Complaint exceed this amount.

(ii)    **In the event Landlord terminates this Lease** due to a default by Tenant, Landlord may recover from Tenant the balance of the Rent payable by Tenant for the remainder of the Term, minus the fair market rental value of the Store for such period, each discounted to present value using a discount rate of the Federal Reserve Bank of San Francisco at the time of the award, plus one percent (1%) per annum, together with costs and expenses proximately caused by Tenant's breach of the Lease.

*Id.* at p. 70, Leases § 20.1.1(c) (emphasis added).

### b.  The Lawsuit

Plaintiffs filed their four-count lawsuit on May 4, 2020. [ECF No. 1]. Count I sought damages for past rents; Count II sought damages for accelerated rents; Count III sought damages against the Guarantor (i.e., Ross Stores, Inc.); and Count IV sought a declaratory judgment about the force majeure provisions of the Leases.

The Complaint alleged that Defendants breached all three Leases by failing to pay rent and other charges when due on May 1, 2020. It also alleges that "Tenant has further advised that its non-payment of rent will continue, as a result of the circumstances related to COVID-19." *Id.* at p. 8.

In their initial Complaint, Plaintiffs explain that they "recognize the challenges posed by COVID-19, including on their own business." *Id.* They also say that Defendants are still obligated to pay rent, an "obligation [which] is not excused." *Id.* They allege that the force majeure provisions are inapplicable and that there is "no contractual basis for the Tenant to avoid its obligation to pay rent." *Id.*

Plaintiffs' Complaint declared the Leases to be in default and demanded in excess

of $5.5 million. *Id.* at p. 10. They alleged that Ross "advised that its non-payment of Rent will continue, as a result of the circumstances related to COVID-19, which is an anticipatory repudiation and breach of its payment obligations under the Leases." *Id.*

A process server served the Complaint and Summons on May 6 and 7, 2020. [ECF Nos. 5; 6]. Defendants jointly filed a motion to dismiss on May 13, 2020. [ECF No. 7]. They argued that the lawsuit violates the leases in myriad ways and asserted a lack of jurisdiction and failure to state a claim. Describing the lawsuit as "nothing more than a misplaced publicity stunt intended to gain an improper benefit and leverage against Ross," Defendants said the Complaint blatantly disregards their "carefully bargained for rights." *Id.* at p. 5.

Specifically, Defendants flagged the following as violations of the Leases and efforts to undermine their contractual rights (1) requiring notice and a subsequent 10 business day cure period; (2) requiring the parties to first try in "good faith" to resolve any disputes by mediation; (3) requiring the parties to refrain from filing suit until 60 days after either party sends a notice requesting mediation; and (4) permitting Ross to withhold rent in the event of a bona fide dispute between the parties. *Id.*

Defendants' dismissal motion also argued that the complaint failed to include any details about the allegations of anticipatory repudiation and invocation of the Leases' force majeure provisions. They contended that these omissions exist because Ross' prior correspondence to Landlords never invoked or even referred to the force majeure

provisions.

Notwithstanding the temporary closure of its stores, Ross advanced April rent and additional charges to Landlords. It noted, in an April 30, 2020 letter, that the April rent payment was a sign of good faith to help stabilize cash flow, while reserving all rights. Ross also encouraged Landlords in its April 30 Letter to negotiate with it in good faith amid the current crisis, providing notice that there were circumstances giving rise to a bona fide dispute by stating, for example, "we have been unable to engage in constructive discussions with you with respect to rent payments amid these unforeseen and unanticipated circumstances." *Id.* at p. 10.

However, the April 30 letter also informed Landlords that: "unless we can come to an agreement, Ross **does not intend** to advance rent or additional charges for the month of May 2020 or possibly thereafter until its business has been **reestablished to its pre-pandemic level**." [ECF No. 7-1, p. 2 (emphasis added)]. The letter also asserted that "[b]ecause Ross has been and continues to be unable to conduct its business as the parties anticipated and agreed to in the Lease, **Ross is not required to pay rent** or additional charges." *Id.* (emphasis added).

Ross contends that this language is not an anticipatory repudiation. Instead, it says that this letter was merely "Ross' clear effort to engage Landlords in a discussion regarding the rent dispute, which should have led to a number of steps, including, but not limited to, notice, a cure period, and mediation provided for in the Leases." [ECF No.

7, p. 11].

On the same day that Plaintiffs filed their lawsuit, their attorney sent a letter demanding payment of the May rent. The next day, on May 5, 2020, Landlords' litigation counsel sent a letter raising the possibility of mediation. Despite the request that Ross advise Tenants' counsel of its willingness to mediate (and to provide the name of a proposed mediator and available mediation dates), this letter also began with the comment that Ross' conduct "has made the prior resolution of this dispute futile." [ECF No. 7-3, p. 2].

Ross' dismissal motion describes this as a "deficient attempt to make up for one of their fatal mistakes in rushing to the courthouse and violating Ross' rights under the Leases." [ECF No. 7, p. 11].

Before filing a response to the dismissal motion, on May 26, 2020, Plaintiffs filed an Amended Complaint. [ECF No. 13]. The Amended Complaint still pursued four counts, but it added detail about the factual background before the lawsuit was filed. It also added additional points about the lease, such as arguing that mediation is not a precondition to filing an action for damages and that "either party" to the Lease may decline to "participate in mediation" and exercise "the option" to have the dispute "determined by suit or action in court." *Id.* at p. 11.

Plaintiffs' Amended Complaint contained the following additional factual allegations: (1) in a March 31, 2020 letter, Ross's Group Executive Vice President wrote

that Defendants had made the "decision to temporarily close all of its stores" [*Id.* at p. 9];

(2) the March 31 letter indicated that Ross would advance April rent but announced that

"[i]n the coming days and weeks" they would be demanding "rent relief and credit" for

the future [*Id.*]; (3) In an April 9, 2020 letter, Ross's Director of Real Estate forwarded a

Letter of Intent ("LOI") for the Landlords to sign, and it provided for "no rent" [*Id.* at p.

10]; (4) the LOI demanded that the Landlords confirm "Tenant shall not owe any, and

Landlord agrees to abate, all rentals under the Lease" for the indefinite future [*Id.*]; (5) the

LOI explained that Ross's intent about "advancing" the April rent was that the funds

were "prepaid rent," which Landlord was to "credit . . . against Tenant's future rent and

lessor charges" [*Id.*]; and (6) in an April 27, 2020 email, Ross's Real Estate Director rejected

an April 22, 2020 email counter-proposal and "sarcastically" asked "Did you read it" and

advised Landlords that "your proposal won't fly **so we'll just go from here**." [*Id.*

(emphasis added)].

The Amended Complaint contends that Ross's actions "were pursuant to a

predetermined, national policy of refusing to pay rent when due, without regard to their

contractual obligations or the economic detriment caused to their landlords by the non-

payments." [ECF No. 13, p. 9].

On May 26, 2020, five days after the Amended Complaint was filed, Defendants

filed a second motion to dismiss. [ECF No. 14]. Plaintiffs filed their response on June 9,

2020 [ECF No. 17] and Defendants filed their reply on June 16, 2020 [ECF No. 18].

In their Response, Plaintiffs noted that Ross failed to pay rent when due on May 1, 2020 and then reconfirmed in a May 13, 2020 letter that it was withholding rent. Plaintiffs also explained in their Response that "even after re-opening their stores for business at the end of May, Defendants still failed to pay rent for June." [ECF No. 17, p. 2]. They also pointed out that "Defendants' notice of their refusal to participate in mediation re-confirmed what was already obvious: that this dispute would need to be determined by this Court." *Id.* at p. 4. They also provided further detail about their view of the mediation requirement: the Leases do in fact require mediation before an *eviction* action is brought, but the mediation provision does not limit the filing of an action for damages and not eviction.

Not surprisingly, Defendants' Reply challenges all of the arguments raised by Plaintiffs. Ross argues that none of their communications rise to the level of anticipatory repudiation or otherwise excuse the Landlords from complying with their pre-suit obligations. And Defendants also stress that (in their view, which Plaintiffs disagree with) the Landlords unambiguously agreed in the Leases that they could recover accelerated rent *only* if they also terminated the Leases -- which they had not done.

Approximately two weeks after filing their Reply in support of their motion to dismiss the Amended Complaint, Defendants filed a motion to stay discovery. [ECF No. 19]. It included a certificate of conferral, confirming an inability to resolve the requested discovery stay with Plaintiffs. Five days later, on July 6, 2020, the parties filed their Joint

Scheduling Report. [ECF No. 20]. Plaintiffs suggested September 15, 2020 as the deadline to complete discovery.

Although this Court did not know of this development at the time, Ross advised Landlord in three separate June 15, 2020 letters sent by overnight mail that it would pay the June rent under protest and under duress, while reserving all rights. [ECF No. 25-4]. These letters advised that the payment "will be made in the coming days." *Id.* Ross made the disputed rent payments for all three stores by July 6, 2020, and informed Landlords that the lost check for May rent for one store would be resent.

On July 15, 2020, Landlords filed their succinct, one-sentence Notice of Voluntary Dismissal Without Prejudice. [ECF No. 22]. Slightly less than a week later (on July 21, 2020), Judge Moreno dismissed the case without prejudice and terminated all pending motions, including the motions to dismiss and to stay discovery. [ECF No. 23].

Approximately two weeks after that, on August 6, 2020, Plaintiffs filed their attorney's fees motion, seeking $40,095 in fees. [ECF No. 24]. On August 19, 2020, Defendants filed their motion for attorney's fees, which doubled as an opposition to Plaintiffs' fees motion. [ECF No. 25]. Although Defendants incurred more than $329,000 in fees, they seek $151,291 in discounted fees and costs, based on lowered hourly rates and other discounts.

In their motions, both parties claim to be the prevailing party for purposes of determining whether attorney's fees should be awarded under the Leases.

15

### c. The Hearing

The Undersigned held a 2.8-hour hearing on the competing fees motions on October 15, 2020. [ECF No. 46]. Landlords filed a notice of supplemental authority before the hearing [ECF No. 37], and Defendants filed one after the hearing [ECF No. 48].

At the hearing, the Undersigned learned that Ross has made payments on all three leases for May, June, and all months since June. In other words, it is now current on the lease obligations. In addition, the Undersigned learned that Landlords filed the voluntary dismissal on their own (i.e., it was not part of a settlement or negotiated resolution with Ross).

However, although Plaintiffs previously advised that Ross made the two payments and "recommitted" to making future payments, Ross did not in any way expressly pass along that message. At the hearing, Plaintiffs' counsel explained that Ross had, in effect, communicated that message through its conduct (i.e., continuing to make payments after the initial two were made).

In their fees motion, Plaintiffs branded themselves as the prevailing party, entitled to full attorney's fees. In their notice of supplemental authority, however, they suggested for the first time that the Court could find that *neither* party prevailed and therefore *not* award attorney's fees to *either* side.

At the hearing, Plaintiffs' counsel, in response to a question from the Undersigned, said their preference is to have the Court conclude that neither party prevailed.

Plaintiffs' counsel also said that the payments from Ross "forced their hand" and compelled them to voluntarily dismiss the lawsuit. More specifically, counsel contended that Plaintiffs could no longer in good faith pursue a claim for anticipatory repudiation (and seek $5.5 million in accelerated rent) when Ross had made the unpaid rental payments and was continuing to fulfill the monthly rent obligations. He said Plaintiffs waited for the checks to clear before filing the voluntary dismissal. He advised that Ross' announcement that checks would be sent "came out of the blue" and was a flat-out reversal of Ross' earlier-stated positions.

Counsel for both sides advised, in response to a question from the Undersigned, that their respective clients had paid their fees in full and are current on their obligations to their respective law firms. Ross' counsel explained that his law firm provided a courtesy discount to Ross because of the ongoing nature of the relationship. He said the clients had paid all the fees billed to date at the discounted rates.

The Undersigned focused on the substantial difference in the amount of fees incurred by the two law firms (i.e., approximately $40,000 for Plaintiffs' firm, as opposed to approximately $329,000 for Ross's law firm). Ross' counsel noted that Ross is seeking only approximately $150,000, but this discounted amount is still almost four times as much as the fees Plaintiffs incurred and is more than eight times the fees actually incurred by Ross' law firm. Ross' counsel suggested that the fees for Defendants are greater because the law firm used slightly-higher hourly rates and because they had to submit

two memoranda when Plaintiffs had to submit only one memorandum (i.e., Ross submitted two motions to dismiss and two replies while Plaintiffs submitted only two responses). The billing records submitted by the parties reveal that Plaintiffs' law firm had two attorneys working on the file while Ross' law firm used four attorneys.

### d.   The Parties' Contentions (in their competing fees motions)

#### i.   <u>Plaintiffs' Views</u>

Plaintiffs assert the following arguments in support of their motion that they should receive attorney's fees as the prevailing party:

1.     They were forced to bring the lawsuit because Ross failed and refused to pay rent.

2.     By paying the unpaid rent and by continuing to pay, Ross has, in effect, confessed its liability.

3.     A plaintiff is entitled to prevailing party attorney's fees under a contractual provision when it obtains the relief if sought, even if the court does not adjudicate the merits.

4.     The claim for unpaid rent was the significant issue in the case and they are therefore entitled to fees. More specifically, the claim for payment of the past-due rent was the subject of Counts I, III and IV of the Amended Complaint.

5.     Ross' claim that it made the payments under protest and under duress is inadequate, legally irrelevant and insufficient to avoid the voluntary payment doctrine

or to change the analysis.

6.     Ross' resumption of payments effectively resolved and mooted the claim for $5.5 million in accelerated rent in Count II.

7.     Ross' motions to dismiss were baseless, and it suddenly reversed its position on paying the overdue rent in full once Plaintiffs' opposition to the dismissal motions exposed them as meritless, less than two months after the lawsuit was filed.

8.     Ross won absolutely nothing in the litigation. To the contrary, the litigation ended when Ross complied with its contractual obligations and finally paid its rent (and continues to pay rent on an ongoing basis).

9.     Plaintiffs' voluntary dismissal does not make Ross the prevailing party because it is the results, not the procedure, which govern the prevailing party determination.

ii.   <u>Defendants' Views</u>

Ross and its Guarantor (i.e., the Defendants) assert the following arguments in support of their motion that they should receive attorney's fees as the prevailing party:

1.     Plaintiffs' lawsuit should never have been filed in the first place because doing so violated Ross' contractual rights to pre-suit notice, a cure period and mediation.

2.     Ross consistently sought dismissal of this improvidently-filed lawsuit and it has obtained that very relief through the Plaintiffs' voluntary dismissal.

3.     Ross did not concede liability by making the payments because it did so

under protest and under duress, reserving all of its rights. Thus, the voluntary payment doctrine is inapplicable.

4.      Plaintiffs sought far more than payment of two months of overdue rent. To the contrary, they tried to accelerate all the remaining rent, collect $5.5 million, and obtain a declaratory judgment. Plaintiffs did not prevail on any of these claims.

5.      Plaintiffs voluntarily dismissed their lawsuit at the last minute to avoid an imminent and unfavorable ruling on the pending motion to dismiss -- a scenario which makes Ross the prevailing party.

6.      Plaintiffs *voluntarily* chose to abandon their claim for more than $5.5 million in accelerated rent and for declaratory relief after obtaining only payment of approximately $250,000 in unpaid rent.

7.      Plaintiffs did not substantially prevail on anything because Ross' position remains that it was entitled to withhold rent payments and that the parties were required to mediate and discuss how the payments should be treated doing forward.

8.      Plaintiffs strategically avoided a judicial determination about the leases, and the absence of a judicial determination therefore does not render inapplicable Ross' defenses.

9.      By advising the Court of its preference for a no-prevailing-party, it's-a-wash ruling, Plaintiffs effectively abandoned their claim of being the prevailing party (or otherwise conceded that their position is weak and unlikely to succeed).

## II.   <u>Applicable Legal Standards and Analysis</u>

The parties agree that Florida law governs the interpretation of the leases. Federal courts sitting in diversity jurisdiction apply the law of the forum state when deciding a motion for attorneys' fees. *A&E Adventures LLC v. GCTC Holdings LLC*, No. 19-24730-CIV, 2020 WL 2139708, at *2 (S.D. Fla. Apr. 16, 2020), report and recommendation adopted, 2020 WL 2129604 (S.D. Fla. May 5, 2020).

Under Florida law, "[p]rovisions in ordinary contracts awarding attorney's fees and costs to the prevailing party are generally enforced." *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 846 F.3d 1159, 1166 (11th Cir. 2017). This particular type of provision "creates the prevailing party's entitlement to reasonable attorneys' fees." *Darretta v. Windsow Properties*, No. 04-14244-CIV-MIDDLEBROOKS, 2008 WL 11408767, at *2 (S.D. Fla. May 1, 2008) (internal citations omitted). Thus, the threshold question the Court must answer is whether Landlords or Tenant (and its Guarantor) are the "prevailing party."

The Eleventh Circuit Court of Appeals, applying Florida law, "has construed the term 'prevailing party' to be the party that has prevailed on the significant issues in the litigation." *Dear v. Q Club Hotel, LLC*, No. 15-CV-60474-COHN, 2017 WL 5665359, at *5 (S.D. Fla. Nov. 1, 2017) (report and recommendation adopted in its entirety by the district court).

"Where there is an attorneys' fees provision for the prevailing party in the contract, the general rule is that the court must find that one of the parties to the contract

prevailed." *Darretta*, 2008 WL 11408767, at *2 (citing *Hutchinson v. Hutchinson*, 687 So.2d 912, 912 (Fla. 4th DCA 1997)). However, there is an exception to the general rule, where "compelling circumstances" will give the trial court "discretion to determine that *no* party prevailed in the litigation and . . . [properly] deny an award of attorney's fees under a prevailing party contract." *Winn-Dixie Stores, Inc. v. Big Lots Stores, Inc.*, No. 9:11-cv-80601-MIDDLEBROOKS, 2016 WL 2918152, at *12 (S.D. Fla. May 18, 2016) (emphasis added). In those cases, "deference is owed to a trial court's discretion." *Darretta*, 2008 WL 11408767, at *2 (citation omitted).

Florida courts have found that the exception exists "where both [p]arties win and lose on significant issues." *Winn-Dixie Stores, Inc.*, 2016 WL 2918152, at *12 (citing *Brevard County Fair Assoc, Inc. v. Cocoa Expo., Inc.*, 832 So. 2d 147, 151 (Fla. 5th DCA 2002)). For example, the exception exits "where both parties to [a] contract won on their breach of contract claims, where both parties lost on their breach of contract claims, or where both parties won and lost." *Darretta*, 2008 WL 11408767, at *3.

Given the dynamics of the lawsuit, it is difficult to pinpoint only one issue or count which will resolve the thorny question of which party prevailed. To be sure, Landlords prevailed, though not through a court ruling or verdict, when Ross paid approximately $250,000 in unpaid rent. But it cannot be said that the $5.5 million claim for accelerated rent and declaratory judgment were not *also* significant issues. Actually, they were *all* significant issues. Each side won a major issue and lost a significant issue. Landlords

"won" on the unpaid rent claim (which means Ross lost), but Ross "won" on the accelerated rent claim (and Landlords lost) when the Landlords voluntarily dismissed the lawsuit after obtaining their partial win.

Ross emphasizes Plaintiffs' voluntary dismissal of their lawsuit as the dispositive factor for deciding which party prevailed. And Ross is correct that this is the *general* rule,[7] but it does not *always* control. The rule is subject to exceptions. "A court may look behind a voluntary dismissal at the facts of the litigation to determine whether a party is a 'substantially' prevailing party." *Tubbs v. Mechanik Nuccio Hearne & Wester, P.A.*, 125 So. 3d 1034, 1041 (Fla. 2d DCA 2013) (stating "the rule is subject to exceptions") (quoting *Padow v. Knollwood Club Ass'n, Inc.*, 839 So. 2d 744, 745 (Fla. 4th DCA 2003)) (internal quotation marks omitted).

Thus, "[i]t is the **results**, not the procedure, which govern the determination of which party prevailed for purposes of awarding attorney's fees." *Tubbs*, 125 So. 3d at 1041

---

[7]   Under Florida law, it is, as a general matter, well-settled that "when a plaintiff takes a voluntary dismissal the defendant is the prevailing party." *Stuart Plaza, Ltd. v. Atl. Coast Dev. Corp. of Martin Cnty.*, 493 So. 2d 1136, 1137 (Fla. 4th DCA 1986) (awarding the defendant attorneys' fees under a prevailing party provision in a lease on the basis that the plaintiff voluntarily dismissed its suit); *see also Thornber v. City of Ft. Walton Beach*, 568 So. 2d 914, 919 (Fla. 1990) (holding that, in general, the defendant is the prevailing party when the plaintiff voluntarily dismisses its suit and that "[a] determination on the merits is not a prerequisite to an award of attorney's fees"); *Gordon v. Warren Heating & Air Conditioning, Inc.*, 340 So. 2d 1234 (Fla. 4th DCA 1976) (same general rule under Florida's mechanic's lien statute).

(emphasis supplied); *see also Blue Infiniti, LLC v. Wilson*, 170 So. 3d 136, 139 (Fla. 4th DCA 2015) (reversing the attorney's fees award to defendant as the prevailing party after Blue Infiniti recovered the majority of what it sought by filing suit and dismissed all three counts); *DSSDR, LLC v. Zenith Infotech, Ltd*., No. CIV. 13-10026-FDS, 2014 WL 1382553, at *5 n.6 (D. Mass. Apr. 8, 2014) ("Florida courts have held that voluntary dismissal does not make the defendant the prevailing party.").

Ross argues that Plaintiffs' voluntary dismissal was filed in order to avoid an imminent and unfavorable ruling and that this makes a fees award in its favor even more appropriate. *Alhambra Homeowners Ass'n v. Asad*, 943 So. 2d 316, 319 (Fla. 4th DCA 2006) (finding that the homeowners association opted for a voluntary dismissal without prejudice "in the face of a likely adverse ruling" on a summary judgment motion).

But the Undersigned cannot now conclude that this suggested (by Ross) motivation was in fact the reason for the voluntary dismissal. Plaintiffs' alternate explanation -- that they already obtained the primary relief and could not ethically continue with an anticipatory repudiation theory for the accelerated rent claim after payment was made -- is not facially irrational. Without further evidence, the Undersigned would be just guessing at the reason for the voluntary dismissal.

Moreover, the Undersigned has similar difficulties analyzing Ross' motivation for making the payments (albeit under protest).

Prevailing party provisions are enforceable when a plaintiff obtains relief it sought

by concession of the defendant, even if there is no adjudication on the merits. *See Flagstar Bank, FSB v. Hochstadt*, No. 08-80795CIV, 2011 WL 13174782, at *4 (S.D. Fla. June 2, 2011); *see also Bessard v. Bessard*, 40 So. 3d 775, 778 (Fla. 3d DCA 2010) (finding actions necessarily mooted the complaint and were the "functional equivalent" of a judgment or verdict in favor of the appellees); *Payne v. Cudjoe Gardens Prop. Owners Ass'n, Inc.*, 875 So. 2d 669, 671 (Fla. 3d DCA 2004) ("Their voluntary compliance with the deed restrictions was the functional equivalent of a judgment or verdict in favor of the plaintiff/association, thus making the association entitled to an award of attorney's fees and costs as the prevailing party.").

Plaintiffs also rely on *Augustin v. Health Options of South Florida, Inc.*, where the defendant, during the pendency of the action, made payment to the plaintiff as prayed for in the complaint, mooting the matter. 580 So. 2d 314, 315 (Fla. 3d DCA 1991). The appellate court held that this "was the functional equivalent of a judgment or verdict in favor of the plaintiff and therefore entitled the plaintiff to an award of attorney's fees . . . as the prevailing party below." *Id.*

For all practical purposes, Plaintiffs urge the "catalyst test," which provides that a party's victory need not be obtained by a final adjudication of a lawsuit's merits. Under this test, it is sufficient if the lawsuit served as a catalyst to prompt the party to take the desired action. Thus, attorney's fees are justified even though there was no judicial involvement in the result. *Stelor Prods., L.L.C. v. Silvers*, No. 05-80393-CIV, 2006 WL

8435228, at *10 (S.D. Fla. July 18, 2006), report and recommendation adopted, 2006 WL 8435227 (S.D. Fla. Oct. 4, 2006).

The Florida Supreme Court has not expressly adopted the catalyst test when determining a party's prevailing party status. *Id.* at *10. However, *Stelor* noted that two Florida appellate courts appear to follow or adopt the catalyst standard.[8]

Ross contends that the catalyst test has been rejected, but it cites federal cases construing federal statutes. *See, e.g., Dionne v. Floormasters Enters., Inc.*, 667 F.3d 1199 (11th Cir. 2012) (evaluating catalyst test argument for fees request under the federal Fair Labor Standards Act). The Undersigned therefore rejects Ross' argument, as *Florida* law governs the issue, and Florida law appears to permit the test (based on mid-level appellate cases).

Assuming for the sake of discussion that the catalyst test is recognized and could theoretically be used here by Plaintiffs, Ross contends the test fails on the merits. Ross argues that the lawsuit "did not act as a catalyst in prompting Ross to take the Plaintiffs' desired action, because Ross did not pay rent in full satisfaction of the dispute between these parties (but rather paid under protest) or pay the acceleration of all rent for the remainder of the Leases' terms." [ECF No. 43, p. 2].

At the hearing, Ross asserted a new argument to defend against the catalyst test: it said it made payments for unpaid rent because the stores had reopened when the COVID-

---

[8]    *Central Magnetic Imagine v. State Farm Mut. Auto Ins. Co.*, 745 So.2d 405 (Fla. 3d DCA 1999); *All-Brite Aluminum, Inc. v. Desrosiers*, 626 So.2d 1020, 1021-22 (Fla. 2d DCA 1993).

19 lockdown restrictions were removed or eased. Therefore, Ross said, the *lawsuit* did not cause the payments; it was the change in economic circumstances (which Plaintiffs did not create) that triggered the decision to make payments.

Of course, Ross never offered this rationale in its memoranda, so the Undersigned is reluctant to simply adopt it without further inquiry. For all practical purposes, additional discovery and perhaps an evidentiary hearing would be necessary to adequately probe Ross' motivation for making the payments and to see whether Ross' theory is merely an after-the-fact, make-weight argument.

Moreover, it is entirely possible that there was a *mixed* motivation for the decision to pay the two months of unpaid rent: the opening of the stores *and* the filing of the lawsuit. The parties have not briefed the issue of whether a dual-purpose motivation is sufficient to successfully invoke the catalyst test. This lack of legal research and analysis is yet another reason why the Undersigned is reluctant to further grapple with the catalyst test and is hesitant to conclusively decide whether Plaintiffs can successfully invoke it here to persuade me to classify them as the prevailing party.

There is another reason generating a compelling circumstance to not select one of the two sides as the prevailing party here. Ross argues that Plaintiffs voluntarily dismissed the lawsuit after receiving payment for the unpaid rent because they wanted to avoid an adverse ruling on the motion to dismiss. But that is less than clear from the record. Landlords proffered another reason for their decision: the facts had changed once

Ross paid, making it impossible for them to still pursue accelerated rent under an anticipatory repudiation theory.

Recognizing the no judge ever ruled on the merits of any claim or defense in this case, it is still accurate to say that each side, in effect, won a major issue and lost a major issue and never received a result on a third issue (i.e., the declaratory judgment claim). Moreover, the record is not sufficiently developed to permit the Undersigned to safely and confidently declare a winner by designating one side or the other as the prevailing party.

The Undersigned began this ruling with some Vince Lombardi quotes, so it is fitting to provide another here one, at the end: "some of us will do our jobs well and some will not, but we will be judged by only one thing -- the result."[9] And the result here, as explained above, is a mixed bag, with no clear winner.

Consequently, the Undersigned, exercising discretion, finds that compelling circumstances exist to find that the "general rule" governing breach of contract claims should not apply here. These circumstances support the conclusion that neither side is the prevailing party. I therefore **deny** both motions for attorney's fees. *See, e.g., Adria MM Prods., Ltd. v. Worldwide Entm't Grp., Inc.*, No. 17-21603-CIV, 2019 WL 861479, at *3 (S.D. Fla. Feb. 22, 2019); *Trytek v. Gale Indus., Inc.*, 3 So. 3d 1194, 1204 n.12 (Fla. 2009) ("Appellate

---

[9]    https:www.brainyquote.com/quotes/vince_lombardi_386968 (last visited October 22, 2020).

courts have upheld decisions where the trial court found no prevailing party under the 'significant issues' test in breach of contract litigation."); *see also Merchants Bonding Co. (Mutual) v. City of Melbourne*, 832 So.2d 184, 186-187 (Fla. 5th DCA 2002) (affirming trial judge's discretion to determine that no party prevailed and noting that "this is a classic case where two parties fought to a draw; no one won and no one lost"); *cf. KCIN, Inc. v. Canpro Investments, Ltd.*, 675 So.2d 222, 223 (Fla. 2d DCA 1996) (emphasis added) ("A rule which requires an award of prevailing party attorney's fees in all cases may result in an unjust reward to a party whose conduct caused the failure of the contract. . . . [A]n attorney's fee award is **not required each time there is litigation involving a contract providing for prevailing party fees**.").

III.   <u>Conclusion</u>

The Undersigned **denies** both motions for attorney's fees and costs. All parties are to bear their own fees and costs.

**DONE AND ORDERED** in Chambers, Miami, Florida, on October 23, 2020.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

<u>Copies furnished to</u>:
All counsel of record